**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Cloud Systems HoldCo IP LLC,

Plaintiff,

v.

Rain Bird Corporation,

Defendant.

No. CV-26-00089-TUC-JCH

**ORDER TO SHOW CAUSE**

Before the Court is the issue of sanctions against Plaintiff's counsel of record Andrew M. Ling. For the following reasons, the Court will order Mr. Ling to show cause why sanctions and/or discipline should not be imposed against him due to his lack of diligence in filing this case, aiding and abetting attorney William P. Ramey III in the unauthorized practice of law in this District, and being dishonest with the Court. The Court will also order Mr. Ling and Mr. Ramey to show cause why the Court should not dismiss this matter with prejudice and award Defendant's attorneys' fees.

## I. Background

The above-captioned matter is for patent infringement. Little litigation has revolved around that subject matter.

Plaintiff Cloud Systems HoldCo IP LLC ("Cloud Systems") filed its Complaint on February 13, 2026. (Doc. 1.) On April 16, 2026, Defendant Rain Bird Corporation ("Rain Bird") filed a motion to dismiss the Complaint. (Doc. 16.) On May 7, 2026, Cloud Systems filed its First Amended Complaint (Doc. 19) and a corresponding notice of filing amended

pleading (Doc. 20). The Court struck the notice for failing to comply with Local Rules of Civil Procedure ("LRCiv") 15.1(b) and ordered Cloud Systems refile a compliant notice by May 22, 2026. (Doc. 22.) The Court also directed the parties meet and confer to determine if the amended pleading made the prior motion to dismiss moot and encouraged Cloud Systems to consider whether it was proper to include certain portions of the amended complaint in a pleading. (Doc. 22.) Rain Bird voluntarily withdrew its motion to dismiss, and Cloud Systems agreed to file a corrected First Amended Complaint and proper Notice in compliance with LRCiv. 15.1(b) by May 22, 2026. (Doc. 23.) The Court then struck the First Amended Complaint, awaiting Cloud System's filing. (Doc. 24.) On May 27, 2026, without any explanation for the delay in filing, Cloud Systems filed its "Notice of Filing Amended Pleading pursuant to LRCiv 15.1(b)," which included a corrected First Amended Complaint (the operative "FAC") as an attachment. (Doc. 25.)

On June 4, 2026, Rain Bird filed a Motion for Rule 16 Scheduling Conference, requesting a conference to establish "early and continuing control so that the case will not be protracted," to discourage "wasteful pretrial activities," and to ensure Cloud Systems' future compliance with the Local Rules. (Doc. 26.) Rain Bird also asserted that William P. Ramey III of Ramey LLP, a Texas attorney, was acting as lead counsel for Cloud Systems behind the scenes without properly seeking pro hac vice admission. (Doc. 26 at 3, 4–5.)

On June 10, 2026, Rain Bird filed its Motion to Dismiss (Doc. 29), which was fully briefed by July 1. (*See* Docs. 30 (Response), 31 (Reply)).

**1. First Show Cause Hearing**

On July 14, 2026, the Court denied Rain Bird's Motion for Rule 16 Scheduling Conference, but set a show hearing, directing Cloud System's counsel to appear and show cause why the Court should not issue sanctions for the unauthorized practice of law. (Doc. 32.) The Order specifically stated:

> Under LRCiv 83.1(b), only members of the Bar of this Court may practice in this District, unless the Court has approved an application for pro hac vice admission. Failure to properly seek admission will result in sanctions. Further, the Court may sanction a properly admitted attorney who facilitates

> or aids another attorney's unauthorized practice before the Court, pursuant to the Court's inherent authority to sanction bad-faith litigation conduct. *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-CV-03089-PHK, 2025 WL 980796 (N.D. Cal. Mar. 31, 2025), *motion for relief from judgment denied*, No. 24-CV-03089-PHK, 2026 WL 793025 (N.D. Cal. Mar. 20, 2026).

The Court held the show cause hearing on July 30. (Doc. 35.) Mr. Ling appeared as the attorney of record for Cloud Systems, with Mr. Ramey seated next to him. (Doc. 35.)

At the show cause hearing, Mr. Ramey informed the Court that after receiving its Order to Show Cause, he filed an application for admission to practice pro hac vice ("PHV"). Mr. Ramey explained that he had previously filed a PHV application with this Court in *WirelessWerx IP, LLC v. GPS Insight, Inc.*, 2:25-CV-3749-MTM, which was denied by Judge Susan R. Bolton on November 27, 2025. (Doc. 37 at 7.) Mr. Ramey stated he delayed filing a PHV application in this matter because "the clerk at the admissions office had said that we likely would be denied until the sanctions proceedings were resolved." (Doc. 37 at 7.) Mr. Ling was the attorney of record in the *WirelessWerx* case, and Judge Bolton's denial of Mr. Ramey's application specifically ordered the Clerk provide a copy of the order to Mr. Ling.

Mr. Ling testified he was local counsel in the instant matter, "reviewing the filings and complying with state law and advising on local rules here in Arizona. But [he] defer[s] to Mr. Ramey on all patent-related matters . . . ." (Doc. 37 at 9.) He stated: "the Ramey firm provided the claim charts, the infringement analysis, the prior art analysis, and they have been communicating directly with defense counsel on the patent-related matters." (*Id.*) Mr. Ling said he was "reviewing the pleadings and all filings before [he] sign[ed] off on them." (*Id.* at 10.) The Court informed Mr. Ling:

> [T]o my mind, the lawyer that appears in the case—and to this point it has been you and you alone—has to comply with . . . Rule 11. And what you told me a moment ago is that you had relied on Mr. Ramey to do the analysis of whether there is a legal or factual basis for the patent claims, and you really hadn't done that.
>
> So to my mind, that means you hadn't complied with your duties under Rule 11 because you hadn't done that independently.

(Doc. 37 at 12–13.) Mr. Ling responded: "All I can say, Your Honor, is that I did read the pleadings. I did review the infringement analysis. I carefully looked and edited some of the motions and the filings. I've read thoroughly through them. So I didn't just simply file them and put my name on it." (Doc. 37 at 13.)

Mr. Ling also testified he "continued to inquire with Mr. Ramey's staff as to . . . the status of the [PHV] application" and "was still expecting that some [PHV] application was going to be filed." (Doc. 37 at 10–11.) Mr. Ling then stated he was aware of the *Koji* case before he undertook representation in this matter, but that he "understood that [they] were in the process of filing for the [PHV] applications and [he] was expecting that those would be granted." (Doc. 37 at 14.) The Court took the matter of sanctions under advisement. (Doc. 35.)

**2. Mr. Ling's Declaration**

On August 12, 2026, the Court ordered Mr. Ling submit a declaration to inform the Court, in part, of all patent cases he had filed in the District of Arizona since January 1, 2024 and, for each case, identify his role and who was patent counsel. (Doc. 38.)

On August 18, 2026, Cloud Systems filed a response to the Court's order, with Mr. Ling's declaration attached as Exhibit A. (Doc. 40.) Mr. Ling declared:

- He was counsel of record in seven patent cases filed in this District since January 1, 2024.
- For each of those cases, Mr. Ling acted "solely as local counsel" and "was responsible for ensuring that every pleading and filing complied with Arizona law, the Federal Rules of Civil Procedure, and this Court's Local Rules; [he] reviewed each filing before it was made under [his] signature; and [he] communicated with [his] client and with co-counsel about the conduct of the litigation.
- For each of those cases, Mr. Ramey was patent counsel, performing the "substantive patent work—including claim charts, infringement analysis, and prior-art analysis."

- Five of the seven identified patent cases were dismissed, and **the dismissals** "**share a common explanation . . . . When it was determined that pro hac vice admission for patent counsel could not then be obtained, the affected cases were promptly dismissed rather than litigated without admitted patent counsel. The dismissals were not an effort to avoid this Court's review; they were the opposite—a decision not to press forward in a posture the Court might find improper.**"
- Mr. Ling understood the above arrangement of responsibilities "to be consistent with Ninth Circuit law. *In Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815 (9th Cir. 2009), the Ninth Circuit held that . . . an out-of-state lawyer's provision of specialized federal-law services through a licensed local attorney of record, without a continuing in-state client relationship and with only attenuated in-state contacts, does not constitute the unauthorized practice of law, *id.* at 821–23."
- Mr. Ramey's delayed PHV application was "a consequence of guidance we received after this Court denied Mr. Ramey's application in No. 2:25-CV-3749-DWL. Following that denial, we were informed that further pro hac vice applications would likely be denied until the sanctions matters pending in another district—now on appeal to the Federal Circuit—were resolved. We were attempting to determine how properly to submit the applications rather than file applications we had been told would be denied."
- He "take[s] the concerns expressed in the Court's Order seriously, and I have already acted on them. **I will continue to review every filing made under my signature and to satisfy myself of its factual and legal basis before filing**, including by direct inquiry of patent counsel into the grounds for the infringement contentions."

(Doc. 40-1 (Ex. A) (emphasis added).)

. . . .

### 3. The Court Denies Mr. Ramey's PHV Application and Sanctions Mr. Ramey

In its September 29, 2026 Order, the Court denied Mr. Ramey's PHV Application, finding the PHV "Application does not otherwise assert that any circumstances have changed from Mr. Ramey's 2025 application to warrant his present admission" and "Mr. Ramey's actions in the above captioned case and delay in seeking pro hac vice admission [were] troubling." (Doc. 44.) The Order states:

> Mr. Ramey does not merely advise Mr. Ling. At least in this action Mr. Ling believes him to be "lead" counsel and Mr. Ramey has direct communication with both the client (having referred Cloud Systems to Mr. Ling for local counsel) and opposing counsel. (*See* Doc. 26-1, Doc. 40 at 4–5, Doc. 40-4.) Additionally, Mr. Ramey appeared in Court at the show cause hearing, where he stated he did not file for pro hac vice admission, not because he was not practicing in this district, but because he knew it would be denied and decided "to go the *Winterrowd* route." (Doc. 37 at 6.) It is unclear to the Court how Mr. Ramey adjusted his involvement in this district to follow the "*Winterrowd* route" nor why Mr. Ramey would believe *Winterrowd* somehow supports that he did not engage in the unauthorized practice of law. *Winterrowd* makes clear that an attorney may not litigate or otherwise assist on a matter "if there is evidence he did not meet the legal qualifications to be admitted pro hac vice to the bar of the relevant court had he applied; [i.e.,] disbarred, suspended or otherwise unqualified attorneys." *Winterrowd*, 556 F.3d at 825 (holding that attorney fees were not recoverable for an attorney who would not be granted pro hac vice admission if he had applied). Mr. Ramey is not eligible for pro hac vice admission in this District because Judge Bolton previously denied his admission, he was sanctioned in *Koji*, he has practiced in seven cases in this District without properly receiving admission, and his actions in this case are egregious. Ghostwriting pleadings does not cure his unauthorized practice of law.
>
> . . . .
>
> Mr. Ramey informed the *Koji* court that he planned to carry on practicing in districts where he was not admitted by having local counsel sign all pleadings: "In essence, Mr. Ramey's plan to avoid the same issues detailed in this Order going forward is to work on California cases by ghostwriting pleadings, briefs, and infringement contentions, as well as lead settlement negotiations, all in the background without informing the judge (or their opponents) of the substantial work they are doing on those cases." *Id.* at *18. The *Koji* court expressly instructed Mr. Ramey not to do this:
>
> The flaw in this plan is that Mr. Ramey leads all litigation at

> > his firm, from strategy, to client communications, to settlement negotiations. Further, under the proposed plan, other out-of-state lawyers from the Ramey firm's Texas office would continue to perform the actual, detailed, and significant legal work to analyze and interpret patent claims, develop infringement theories, work with expert consultants, and prepare infringement claims charts[.]
>
> *Id.* The Court explained, "[w]hile 'reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry,' the Ninth Circuit has made clear that '[i]n relying on another lawyer, . . . counsel must acquire[ ] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact.' An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry." *Id.* at *20 (quoting *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986)).
>
> . . . .
>
> Rather than limiting his involvement in cases in this District or ceasing involvement altogether, Mr. Ramey continued practicing law in this District. His prior statements at the hearing in *Koji* reflect a clear plan to deceive district courts in flagrant disregard of their pro hac vice requirements. The Court finds that Mr. Ramey's pattern of practicing behind the scenes in this District has resulted in seven patent suits of questionable merit, wherein Mr. Ling has submitted filings and made representations to this Court without the necessary patent expertise to do so and in violation of his Rule 11 obligations. Considering the *Koji* court expressly instructed Mr. Ramey not to proceed with his plan to practice behind the scenes and issued sanctions specifically aimed at deterring this future conduct, the Court also finds Mr. Ramey's violations sufficiently egregious and deserving of more severe penalties.

(Doc. 44.) The Court personally sanctioned Mr. Ramey in the amount of $9,450 and ordered Mr. Ramey self-report his sanctions to the bars of which he is a member. (Doc. 44 at 8.)

**4. Motion to Dismiss Hearing**

On September 30, 2026, the Court held a hearing on Rain Bird's Motion to Dismiss. (Doc. 50.) The Court began the hearing informing Mr. Ling that he "made some admissions that have strongly suggested (A) that you violated Rule 11 when you filed this complaint under your name" not as "just local counsel" but as "the only attorney on the case" and (B) Mr. Ling "worked with Mr. Ramey, conspired with him, essentially, to help him engage in the unauthorized practice of law in this District." (Doc. 54 at 4 (OA transcript).)

Mr. Ling restated his belief "in good faith, that I did file the complaint in compliance with the requirements to file the complaint. I did read the complaint. I read the claim charts." (Doc. 54 at 5.) The following exchange then occurred:

> MR. LING: I never had anticipated that we would be in this position with the application for pro hac vice. I was not aware of all the complications that were mentioned in your order in the past when I agreed to serve as local counsel. So, Your Honor, with all due respect, I believe that I complied with my obligations under Rule 11.
> THE COURT: So when you say you weren't aware, are you saying you weren't aware of the order in the case out of the Northern District of California that sort of sanctioned Mr. Ramey? Are you saying you weren't aware of that?
> MR. LING: No.
> THE COURT: Because I believe the last time you told me that you were aware of it.
> MR. LING: I was only -- I only became aware of it soon before the July 30th hearing, about the circumstances pertaining to that particular case in California.
> THE COURT: All right.
> MR. LING: **When I agreed to serve as local counsel, I was not aware of the problems that he had with appearing as outside -- or as counsel in those other cases, and he had problems with this pro hac vice application. I wasn't quite understanding why it was getting denied.** I kept asking the firm, what is the status of the application.
> THE COURT: **So I believe you just told me that before you filed this case, you didn't understand the issues that Mr. Ramey had in the Northern District of California.** That's what you're telling me?
> MR. LING: **Yes.**
> THE COURT: So three months before you filed this case, Judge Bolton issued an order denying pro hac vice admission for Mr. Ramey in a case that you were local counsel on, correct?
> MR. LING: Yes. And I did not understand at the time why that was denied until I got up to speed after she issued that order. I started becoming aware of the circumstances behind his [sic] denial of the application.
> THE COURT: All right. And so you just said a couple of things that were inconsistent, so I want to clarify. When Judge Bolton issued her order and referenced the Northern District of California case, at that time did -- is that when you became aware of what was going on in the Northern District of California? Or what had gone on? What had happened there? Because that's what you just said; is that correct?
> MR. LING: Yes. Yes.

> THE COURT: All right. **So that was three months before you filed this case. So it is not correct for you to say then that you didn't know about what was happening in the Northern District of California when you agreed or when you signed the complaint in this case.**
> MR. LING: We discussed that case, and he advised me that he felt that he was in compliance with whatever procedures or sanctions orders that he had to fulfill, and that he was confident that we would ultimately file a new application for pro hac vice. And as he testified at the show cause hearing, he was trying to comply with the requirements at that time to seek admission as counsel. So I was just deferring to that: whatever procedures he had to fulfill to get the application approved.
> THE COURT: And you were filing documents that were prepared by him prior to him even filing an application for pro hac vice admission, correct?
> MR. LING: I thought that the pro hac vice applications were already submitted at the time that I filed those pleadings.
> THE COURT: All right.

(*Id.* at 5–8 (emphasis added).)

Mr. Ling then asserted that he had planned for Mr. Ramey to argue at the hearing and asked the Court for a 60-day continuance so he could secure local patent counsel to argue the case because he is "not qualified to handle patent matters, patent litigation, of this nature." (*Id.* at 8.) The Court denied the motion. (*Id.* at 9.) Mr. Ling then asked to dismiss the case without prejudice, which Defense counsel opposed, stating, "this is the third time the plaintiff has . . . amended their complaint" and "[a]t this point they have caused my client to incur a substantial amount of fees in fighting what I think is a frivolous complaint." (*Id.*). The Court stated it would "entertain" Defendant's request for attorney's fees, priced at $700 an hour, and denied the voluntary dismissal. (*Id.* at 10.)

Mr. Ling attempted to submit to the Court slides prepared by Mr. Ramey. (*Id.* at 10–11.) The Court then asked Mr. Ling to explain how the patent at issue operates in a simplified manner, and Mr. Ling could not do so. (*Id.* at 12–14.) The Court directed Mr. Ling to specific Exhibits attached to the FAC and asked if Mr. Ling could explain them, because they appeared to have nothing to do with this case. (*Id.* at 14–15.) Mr. Ling could not. (*Id.* at 15.) The Court then asked Mr. Ling about the use of Artificial Intelligence in generating the exhibits, and the extent to which the exhibits were independently verified. (*Id.* at 16–17.) Mr. Ling could not. (*Id.* at 17.) The Court then asked if Mr. Ling ever

verified any of the source links in the exhibits. (*Id.* at 17.) Mr. Ling said he did not "because [he] conferred with Mr. Ramey." (*Id.*)

The Court asked Mr. Ling if he made any changes to the Response to the Motion to Dismiss, to which Mr. Ling said: "No. I reviewed it" and then signed off on it. (*Id.* at 18.)

After the Court's colloquy with Defense counsel, the Court attempted to ask Mr. Ling in what regards he disagreed with Defense counsel's proffered flow charts outlining the functioning of the patent and how the FAC explains the allegedly infringing devices to operate. (*Id.* at 34–44.) Mr. Ling stated he agreed with the flow chart outlining the patent but did not agree with the other charts. (*Id.*) Mr. Ling could not coherently explain his disagreement. (*Id.*) The Court took the Motion to Dismiss under advisement. (Doc. 50.)

## II. Sanctions

Considering the foregoing, the Court is considering sanctioning Mr. Ling for his lack of diligence in making filings and appearing before this Court, aiding and abetting Mr. Ramey in the unauthorized practice of law, and dishonesty with the Court. The Court is also considering dismissing this matter with prejudice and awarding Defendant's attorneys' fees against Mr. Ling and/or Mr. Ramey.

The conduct at issue here potentially implicates various procedural and ethical rules. First, under Federal Rule of Civil Procedure ("Rule") 11(b), an attorney submitting a pleading to a court certifies that "the claims, defenses, and other legal contentions are warranted by existing law" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)," and "[i]f after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1), (c)(3).

Second, Federal Rule of Civil Procedure 41(b) allows a district court to dismiss an action for failure to comply with the Federal Rules of Civil Procedure, the district court's

local rules, or court orders. *See* Fed.R.Civ.P. 41(b); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) ("[C]ourts may dismiss under Rule 41(b) sua sponte, at least under certain circumstances. *See, e.g., Olsen v. Mapes*, 333 F.3d 1199, 1204 n. 3 (10th Cir.2003) ('[T]he Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders.').")

Third, the Local Rules of Civil Procedure for the District of Arizona (the "Local Rules") provide an independent avenue to sanction Mr. Ling. The Ninth Circuit has repeatedly explained "the importance of following the court's local rules. 'District courts have broad discretion in interpreting and applying their local rules.'" *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983)). Local rules have "the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (citation omitted). They "are binding upon the parties and upon the court, and a departure from local rules that affects substantial rights requires reversal." *Professional Programs Group v. Department of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (internal quotation marks omitted). Under LRCiv. 83.1(f), a court may, on its own initiative and after notice and a reasonable opportunity to be heard, impose sanctions such as fines, costs, fees, or other ethical penalties against an attorney who fails to follow the federal or local rules. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) ("[C]ivil sanctions may be imposed so long as the court provides adequate notice and an opportunity to be heard.").

Fourth, "[a]ny court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct. The nature of a disciplinary proceeding is neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent. At a minimum, however, an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Standing Comm. on Discipline of U.S. Dist. Ct. for S. Dist. of California v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984) (citations omitted). "'[U]pon a finding or acknowledgement that the lawyer has engaged in professional misconduct,' the Court has the power to sanction attorneys, commensurate

with the severity of their misconduct, with disbarment, suspension, reprimand/censure ('public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice'), admonition ('private reprimand'), and probation." *Ruiz v. Magellan Fin. & Ins. Servs.*, No. CV-23-02090-PHX-DWL, 2026 WL 1970867, at *6 (D. Ariz. July 8, 2026) (quoting ABA Standards for Imposing Lawyer Sanctions).

**A. Diligence**

Under Rule 11, an attorney submitting a pleading to a court certifies that "the claims, defenses, and other legal contentions are warranted by existing law" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Beyond Rule 11, the Arizona Rules of Professional Conduct in the Rules of the Supreme Court of the State of Arizona, which apply to attorneys who practice before this Court under Local Rule 83.2(e), provide applicable standards here. "A lawyer shall act with reasonable diligence . . . in representing a client." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.3. Further, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a good faith basis in law and fact for doing so that is not frivolous . . . ." A.R.S. Sup. Ct. Rules, Rule 42 Rules of Prof. Conduct, ER 3.1. And a lawyer "shall provide competent representation," which requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.1.

Based on the foregoing, the Court is concerned that Mr. Ling has operated throughout this entire litigation as the only counsel of record for Plaintiff and yet has not understood the filings he has made with this Court and thus appears to be unable to satisfy his ethical obligations and duties under Rule 11. Although Mr. Ling asserts he operated solely as "local counsel" in this matter, that cannot be the case where he is the *only* counsel of record. And Mr. Ling has failed to ensure his filings with the Court comply with federal and local rules. The Court will order Mr. Ling to show cause why he should not be sanctioned for this conduct.

. . . .

**B. Aiding and Abetting the Unauthorized Practice of Law**

Under LRCiv 83.1(b), only members of the Bar of this Court may practice in this District, unless the Court has approved an application for pro hac vice admission. Further, the Court may sanction a properly admitted attorney who facilitates or aids another attorney's unauthorized practice before the Court, pursuant to the Court's inherent authority to sanction bad-faith litigation conduct. *See Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-CV-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025).

Throughout this litigation, Mr. Ling appears to have operated as a conduit for Mr. Ramey to practice law in this District, although Mr. Ramey is not authorized to do so. Even at the Motion to Dismiss hearing, Mr. Ling appeared with slides prepared by Mr. Ramey, and Mr. Ling seemed to make his arguments to the Court by reading off of those slides. The Court will order Mr. Ling to show cause why he should not be sanctioned for this conduct.

**C. Dishonesty**

A lawyer also has a duty of candor toward the tribunal and "shall not knowingly . . . make a false statement of fact or law to a tribunal." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 3.3(a)(1). "[T]he court need not find squarely intentional conduct to impose serious discipline . . . for misrepresentations made to the court." *Franco v. Dow Chem. Co. (In re Girardi)*, 611 F.3d 1027, 1037–38 (9th Cir. 2010).

Throughout this litigation, Mr. Ling has made representations to the Court that appear to be dishonest. For example, in his declaration, Mr. Ling asserted that "[w]hen it was determined that pro hac vice admission for patent counsel could not then be obtained, the affected cases" (five of Mr. Ling's seven patent cases) "were promptly dismissed rather than litigated without admitted patent counsel, not in an "effort to avoid this Court's review" but a decision to not "press forward in a posture the Court might find improper." (Doc. 40-1 at 4.) The Court finds this assertion unsupported by the record. Four out of five of these cases were filed *after* Judge Bolton denied Mr. Ramey's initial PHV application, and notably, after the instant action. Further, Mr. Ling's client declared that two of the five cases were dismissed, not due to Mr. Ramey's PHV status, but when it became clear that

service could not be executed within the requisite period. (Doc. 40-3 at 2.) Moreover, one of Mr. Ramey's cases, filed *before* Judge Bolton denied Mr. Ramey's PHV application, was not dismissed voluntarily, with Mr. Ramey presumably still litigating the matter through Mr. Ling until Judge Humetewa recently dismissed the case on motion by the defendant. *See LInfo IP LLC v. ZipRecruiter Inc.*, No. 2:25-cv-03718-DJH, Doc. 33. What's more, Mr. Ling repeatedly told the Court, leading up to and at the September 30 oral argument, that he believed Mr. Ramey's PHV application would be granted.

Likewise, at the September 30 oral argument, Mr. Ling made repeated misrepresentations to the Court regarding his knowledge of Mr. Ramey's prior misconduct. It was not until the Court pressed Mr. Ling and pointed out his inconsistent statements that Mr. Ling admitted he had knowledge of Mr. Ramey's misconduct before becoming counsel of record and filing this matter.

The Court will order Mr. Ling to show cause why he should not be sanctioned for his dishonesty with this Court, including, but not limited to, the two above examples.

**D. Dismissal and Attorney's Fees**

Under 35 U.S.C. § 285 of the Patent Act, a court may award "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated." *Dragon Intellectual Prop. LLC v. DISH Network LLC*, 101 F.4th 1366, 1369–70 (Fed. Cir. 2024) (alterations omitted) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The court decides whether a case is "exceptional" by "considering the totality of the circumstances" including, but not limited to "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 & n.4. "An objectively baseless patent case is one in which the patentee's assertions—whether manifested in its infringement allegations or its claim construction positions—are "such that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*,

726 F.3d 1306, 1327 (Fed. Cir. 2013) (quoting *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)).

Likewise, "[a]n attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To impose sanctions under § 1927, the Court must find subjective bad faith, such as that "the attorney recklessly or intentionally misled the court," "recklessly raised a frivolous argument which resulted in the multiplication of the proceedings," or "recklessly or intentionally misrepresenting facts." *Indiezone, Inc. v. Rooke*, 720 F. App'x 333 (9th Cir. 2017) (quoting *In re Girardi*, 611 F.3d at 1061).

Similarly, under a court's inherent powers, it "may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021). "Although it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, 'courts may rely upon their inherent powers to sanction bad-faith conduct even where such statutes and rules are in place.'" *Id.* (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001)). To act under the Court's inherent power, it "must find either: (1) a willful violation of a court order; or (2) bad faith." *Id.* at 1090. "A willful violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Id.* (quoting *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). "On the other hand, bad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose." *Id.* "Additionally, the amount of monetary sanctions must be 'reasonable.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (quoting *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1184 (9th Cir.), *as amended by* 803 F.2d 1085 (1986)). *See Burris v. JPMorgan Chase & Co.*, 341 F.R.D. 604, 612 (D. Ariz. 2022), *aff'd*, No. 21-16852, 2024 WL 1672263 (9th Cir. Apr. 18, 2024).

Finally, the Local Rules afford the Court the ability to dismiss a matter or impose attorneys' fees as a potential sanction: "If, in a civil case, the Court finds that an attorney, party, supervising attorney or law firm has committed repeated serious violations without just cause, such finding may result in the imposition of more serious sanctions, including but not limited to, increased fines, fines plus attorneys' fees and costs, contempt, or the entry of judgment against the offending party on the entire case." LRCiv. 83.1(f).

As potential sanctions for the above conduct, and Mr. Ramey's conduct outlined in the Court's prior order, the Court considers the severe sanctions of dismissing this matter with prejudice and ordering Mr. Ling and/or Mr. Ramey to pay Defendant's attorney's fees. At the September 30, 2026 oral argument, it became clear to the Court that Mr. Ling has made little, if any, attempt to understand the substantive arguments raised in any of the pleadings he has filed with the Court, or verify that those substantive arguments are supported by law and fact. *See Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-CV-03089-PHK, 2025 WL 980796, at *10, 12 (N.D. Cal. Mar. 31, 2025), *motion for relief from judgment denied*, No. 24-CV-03089-PHK, 2026 WL 793025 (N.D. Cal. Mar. 20, 2026) (awarding fees under § 285 where the attorney of record "lacked adequate pre-suit diligence" and made no "pre-filing inquiry . . . herself" as to whether the complaint was warrant). It is also clear to the Court that Mr. Ling did little to actually review the materials, having not attempted to follow any of the source links on the claim sheets nor even inquiring with Mr. Ramey (who prepared the materials) about glaringly misplaced claim sheets and the use of artificial intelligence. Along these same lines, it appears to the Court that Mr. Ramey may have used little diligence in drafting the filings for the Court. As pointed out at the September 30 oral argument, there are various issues with the claim sheets attached to the FAC, including sheets appearing to reference devices not at issue here and source links (some of which indicate the use of artificial intelligence) not working.

Moreover, upon review of the Complaint, the pleadings for the Motion to Dismiss, and the Motion to Dismiss oral argument transcript, the Court believes this matter may be plainly frivolous, and that Mr. Ling and Mr. Ramey have acted in bad faith in both filing this matter and carrying on this litigation. It appears Plaintiff's counsel has filed

purposefully vague and otherwise confusing pleadings to see if something sticks, drive up litigation prices, and incentivize Defendant to settle an otherwise unmeritorious claim for less than the cost of defense. *See SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."); *see also Koji,* 2025 WL 980796, at *10, 12 (finding an "exceptional case," sanctioning the attorneys, including Mr. Ramey, under § 1927 and the court's inherent power, and awarding attorneys' fees for conduct "result[ing] from practices or policies of the Ramey law firm with regard to failure to conduct reasonable pre-filing inquiry" and bad faith conduct "drag[ging] out litigation" and forcing the defendant "to incur significant additional expenses"). Moreover, Defendant's counsel has spent much of its time—not litigating the merits of the FAC—but rather addressing the misconduct of Plaintiff's counsel. *See Rousseau*, 985 F.3d at 1089–90 (permitting sanctions under the court's inherent power to "redress the wronged party 'for losses sustained.'" (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994))).

The Court will order Mr. Ling and Mr. Ramey to show cause why the Court should not dismiss the matter with prejudice and award Defendant's attorneys' fees, personally payable by Mr. Ling and/or Mr. Ramey, as sanctions for the above conduct.

**III. Conclusion**

For the forgoing reasons, the Court is considering issuing sanctions personally against Plaintiff's counsel of record Mr. Ling for failing to practice with reasonable diligence, aiding and abetting Mr. Ramey in his unauthorized practice of law, and dishonesty with the Court. The Court is also considering the more severe sanctions of dismissing this matter with prejudice and awarding Defendant's attorneys' fees against Mr. Ling and Mr. Ramey for filing a frivolous patent matter and intentionally prolonging this litigation in search of an easy settlement. The Court will set a show cause hearing on these issues.

. . . .

## IV. Order

Accordingly,

**IT IS ORDERED setting** a show cause hearing for **Monday, October 26, 2026 at 10:00 AM for one (1) hour**. Plaintiff's counsel of record Andrew M. Ling and attorney William P. Ramey III must attend the hearing and show cause why the Court should not issue sanctions as described above. Defendant's counsel has leave to appear telephonically and may email chambers (hinderaker_chambers@azd.uscourts.gov) for call in information.

Dated this 6th day of October, 2026.

John C. Hinderaker
United States District Judge

CC: Mr. William P. Ramey III at wramey@rameyfirm.com